**CITY PRODUCTS CORPORATION, d. b. a. PILSNER BREWING COMPANY, Appellant, v. BOARD OF LIQUOR CONTROL, Appellee.**

Ohio Appeals, Tenth District, Franklin County.

No. 5829.   Decided October 21, 1958.

John T. Feighan, Jr., Cleveland, Byron E. Ford, Columbus, for appellant.

William Saxbe, Atty. Genl., John W. Leibold, Asst. Atty. Genl., Columbus, for appellee.

## OPINION

By MILLER, J.

This is a law appeal from a judgment of the Common Pleas Court affirming the order of the Board of Liquor Control suspending the appellant's A-1 liquor permit for a period of twenty-one days. The charge filed against the appellant is as follows:

"On or about the following dates—September 12, 19, and 26, October 3, 10, 21, 24, and 31, and November 8 and 14, in the year 1956, you and/or your agent or employee did sell beer to a retail dealer, to-wit, James Proios, dba Jim's Lunch, who is not the holder of a proper permit at the time of the sale or promise, in violation of provisions of the liquor control act, and regulations of the board of liquor control."

This violation was further identified as being against the provision of §4301.25 **(D) R. C.,** being a sale to a person not having a proper permit.

There was identified and offered into evidence both the originals and duplicates of sales tickets showing sales of 3.2% beer to James Proios, the original of these sales tickets having been confiscated from James Proios, dba Jim's Lunch, who was the alleged buyer in the case.

On the basis of these sales slips, the Board found that there had been a violation of the provisions of the Liquor Control Act and the Regulations of the Board.

The appellant complained that the charge was sustained upon evidence which was improperly admitted into the record. Counsel are in agreement, and we think properly so, that the production of evidence before the Board of Liquor Control shall be governed in general by the rules of evidence governing its admission in courts of law. The question therefore presented is whether the sales slips, which were identified by Paul A. White, were properly admitted. He testified as upon cross-examination in response to a subpoena duces tecum to produce the records of the sale in question, and which was served upon Mr. George Carter, a vice president of the appellant corporation. White testified that he was not an officer of the corporation but was first assistant to the vice president. He testified further as follows:

"Q. I will ask you, Sir, if you have brought with you to-day the records of the City Products Company, doing business as the Pilsner Brewing Company, in regard to sales by your company to one James Proios, doing business as Jim's Lunch, located at 1697 East 55th Street in Cleveland?

"A. Yes, Sir.

"Q. Handing you, Sir, what have been marked for purposes of identification as 'Department's Exhibits B and B-1' through 'B-10,' I will ask you if you can identify those exhibits, please.

"A. Yes, Sir.

"Q. Will you identify them, please?

"A. They are duplicate sales tickets of the Pilsner Brewing Company.

"Q. And will you explain what you mean by 'duplicate sales tickets'? How are they used in your operation—business operation?

"A. They are used to reflect the sale of beer to permit holders.

"Q. And are these the ones that you brought with you to-day in response to the subpoena issued to Mr. Carter?

"A. Yes, Sir.

"Q. Handing you what have been marked for purposes of identification as 'Department's Exhibit A and A-1' through 'A-10,' I will ask you if you are able to identify those?

"A. Yes, Sir.

"Q. Will you identify those?

"A. They are the original sales slips of the Pilsner Brewing Company, reflecting sales.

"Q. Are these the originals of which Department's Exhibits B through B-10 are the duplicates?

"A. That is correct.

"Q. And in the course of your business, what happens to the originals when a sale is made?

"A. The original is left with the permit holder.

"Q. It is with the permit holder to whom the sale is made?

"A. That is correct.

"Q. And can you tell by observing these exhibits A through A-10, and B through B-10, the name of the salesman that made the sales indicated by these slips?

"A. The name on here is Ray Kenzig.

"Q. And handing you what has been marked for purposes of identification as 'Department's Exhibit C,' I will ask you if you are able to identify that?

"A. Yes, this is our attendance record.

"Q. The attendance record?

"A. Of the employe.  That is correct.

"Q. And that is the attendance record of whom?

"A. Of Ray Kenzig.

"Q. Is that the same Raymond Kenzig that is listed on Exhibits A through A-10, and B through B-10?

"A. I would assume it is.

"Q. Calling your attention again to Department's Exhibit B, where it is written in the first column '6,' will you tell us what that indicates, that '6,' and the writing across on that line?

"A. This ticket shows six cases of P. O. C., 12-ounce, 3.2 beer.

"Q. And what does it show happened to those six cases?

"A. What happened to them?

"Q. Yes, I will ask you, does that indicate that on this date listed at the top, October 10, 1956, Ray Kenzig sold from the Pilsner Brewing Company, six cases of P. O. C., 12-ounce, 3.2 beer?

"MR. FEIGHAN: Object to that.  The record speaks for itself.

"JUDGE KOCH: Overruled.

"MR. FEIGHAN: Exception.

"A. From the record, it would—I would presume that there were six cases of 3.2 beer sold. 'I don't know, but from the record, it would show that.

"Q. Are these the permanent records made by the Pilsner Brewing Company in regard to sales made by their salesmen?

"A. Yes, Sir.

"Q. I'm referring now to Department's Exhibit B through B-10.

"A. Yes, Sir.

"Q. Are you acquainted with Raymond Kenzig?

"A. I'm not personally acquainted with him.  I couldn't say that I would know him if he walked in the room right this moment.  We have over fifty drivers, and I couldn't say I was personally acquainted.

"Q. And this you have identified, Department's Exhibit C,—is that a permanent record maintained in your personnel department with regard to this employe?

"A. Yes, it is."

At the conclusion of the plaintiff's case, the sales slips were offered in evidence as "Defendant's Exhibit B, B-1 through B-10." Counsel thereupon objected in the following terms:

"MR. FEIGHAN: I'm going to object to the introduction of all these items on the grounds that although they are the records of the Pilsner Brewing Company, they have never been identified as to the maker; that there has been no proof by them of the facts as to who made the entries, or who made the original tickets. They are merely evidence of some transaction that are the records of the Pilsner Brewing Company.

"JUDGE KOCH: Overruled. They may be admitted."

Now §2317.40 R. C., defines when relevant records may be admitted as competent evidence, to-wit:

"A record of an act, condition, or event, in so far as relevant, is competent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, or at near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission."

Although the record reveals that White was not the custodian of the records, neither did he make them, the inference is permissible that they were made under his supervision since he was an assistant to the vice president, an officer of the corporation superior to the custodian in charge of the records. It further appears that he identified the slips, the method of their preparation, that they were made in the regular course of business at or near the time of the alleged sale. This testimony was sufficient to justify the admission of the slips into evidence.

It is also urged that since White was not an officer of the corporation, that he was not a proper person to be cross-examined at the instance of the adverse party, citing §2317.07 R. C. Even though he may not have been a proper person for cross-examination under this section, the Board clearly had the right to treat his testimony as being given on direct examination. In either event, it constituted admissible evidence sufficient to establish the unlawful sale by the appellant.

Counsel urged the severity of the penalty imposed, with which we express our sympathy, but when the record is supported by the proper degree of proof, this court does not have the authority to vacate, reverse or modify the penalty imposed by the Board. In the case of **Delmonte Cafe v. Department of Liquor Control, 74 Abs 459,** this court said at **page 460:**

"The Court having found that the order is supported by reliable, probative and substantial evidence and is in accordance with law had no power under the statute to modify the penalty by reducing it from 45 days to 15 days."

See also **Andrews v. Board of Liquor Control, 164 Oh St 275,** and §119.12 R. C.

We, therefore, hold that the judgment of the Common Pleas Court

is supported by reliable, probative and substantial evidence and is in accordance with law.

The judgment will be affirmed.

PETREE, PJ, concurs.
BRYANT, J, not participating.